OPINION of the Court, by
Judge Bibb.
— The bill In chancery was exhibited by Craigmiles, to have th specific execution of a parol agreement, alleged to have been made with Samuel Grant in his lifetime, for all the lands in his tract lying beyond a certain road ; for which Craigmiles, as is alleged, was to pay at the rate of sixty pounds per hundred; the supposed, quantity is 16C acres ; the allegation is that the payment was to have bee'n made in joiner’s work, “ partly in house building and partly in any other joiner’s work that the complainant “ got possession of the said land” — and shortly after said Grant called upon him for some joiner’s work, and the complainant wrought at divers kinds of joiner’s work to the value of nine pounds five shillings j that *204 Grant died, and since his death, that the executors had ca-lled Upon the complainant, and that he had done additional work to the value of the land at the price afore-that the agreement was made in November 1788 ; that Grant was killed by the Indians, in an ex-peditio.n against them carried on in the year 1790.
evidences of the proper con-ftruction of tne natute of this state, although similar in its
tract lands alleged to have been made by She ancestor, will not be fpe-cificaiiy enforced against m-fotttiy although their guardians do not insist tute* ^a ainst ¿uds ml pet-juries.
The answer of the infant heirs by their guardian,, ,. . , , ^ admits a conversation was had between their ancestor and the complainant, in which said Grant expressed his intention to build a house, and that the complainant was t0 *1° a Part °f the work, for which said Grant was to let him have land out of the tract on which he (Grant) i¡ve¿ . but: ⅛¾⅜ Grant chanced his mind about building , . ?, - , . « . . ° on that tract, or parting with any or the land ; insists that the executors had permitted the complainant to do tpe mentioned in the bill subsequent to the death * of their ancestor, upon condition, t-nat it the contract insisted upon by the complainant was valid, that then the wor^ should be considered in discharge thereof, but otherwise that the executors would pay him for it.
On the 10th of August 1789, said Grant published his last will and testament, by which he devised the land in question to his children, without mention of the complainant’s claim.
The defendants have not in their answers, insisted on the statute against frauds and perjuries ; but have insisted that the said Grant had changed his mind about building, and that he had a right so to do, or in other words, that there was no obligatory agreement. The circuit court of Scott, decreed a specific performance and convejrance of land ; to which decree, a writ of error has been prosecuted.
If the plain unsophisticated expressions of the statute against frauds and perjuries, enacted by the Legislature of Virginia, are to have operation upon this case, it seems clear that the court below erred in decreeing a conveyance of land. But the decisions of English Chancellors upon their statute of the 29th of Charles II. similar in its provisions to ours, have been resorted to. These adjudications are not to be regarded as evidence of the law in our courts ; they are decisions upon a statute of Great Britain, which, as such, never had any force in Virginia, nor in this state, and therefore they stand upon a very different footing from those decisions which *205 are considered as evidences of the unwritten law. So far as those decisions can enlighten and convince the understanding and judgment, they will be respected; not as binding, because of the authority by which they were given,but as the arguments of intelligent lawyers. But we are opposed to adopting the constructions of that statute given by the English Chancellors. 1st. Because they have rendered it an uncertain and perplexed rule of action, by contradictory and irreconcilable decisions. 2dly. Because the mischiefs proposed to bq remedied by the statute, are left almost as much without redress since the statute as before, and other mischiefs are introduced. In fine, because it seems to us, by subtile and ingenious constructions, the statute has become almost ¾ dead letter, and an increased number of cases have been drawn within the mere arbitrium of the judge.
The statute against frauds and perjuries, requires that the agreements respecting lands, should be in writing, or some note or memorandum thereof, “ and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorised,” otherwise the action shall not be brought. The object designed to be accomplished by the statute, is to prevent suits conceived in fraud, from being supported by perjury. It is not against the fraud of the reus but against that of the actor, that the statute intended to provide. For without the statute, parol evidence would be competent to maintain the plaintiff’s action ; to require a higher degree of evidence therefore is not for the purpose of aiding the plaintiff, but for protecting the defendant against the fraud of the plaintiff, and the perjury of witnesses. The mischief to be remedied is fraud and perjury, the remedy devised by the Legislature is a requisition of written evidence. Some judges have thought, that another kind of evidence was equipollent with written evidence; such as paying the consideration, being let into possession, making valuable improvements, &c. which are deemed part performance. Now before it can be decided whether an agreement has been in part performed, the antecedent questions must be decided, that is to say, did the plaintiff and defendant agree, and what were the terms of the agreement ? Until these questions are settled, it cannot ⅜⅜ affirmed that the one party hath or hath not per *206 formed his part of the agreement. But according to the statute, these preliminary questions can only be responded to by written evidence. The same fraud and perjury which can conceive and prove the agreement by parol, cán also prove the performance in part, in a group of cases clearly coming within the mischiefs intended to be provided against by the statute. It cannot be denied, but that cases may arise, where an agreement, from its publicity, can be proved by parol so. as to convince the mind as strongly as if it were evidenced by a writing signed by the party to be charged thereby ; and in such cases to permit the party to shelter himself from the performance under a plea of the statute, would be making that a protector of fraud, which was intended to guard against it. But this is only ¾ partial evil resulting from the general good ; an evil however not entirely without redress, since the person, who has paid a consideration deemed valuable in law, may have an action to recover back the consideration ; although he cannot have the land itself for which it was paid. But when the lav/ is known, the party who fails to get the land agreed for, because he is without the evidence required, must take the blame to himsell, for it is his own folly or negligence, that has made him part with his money in expectation of the land, or e converso, the possession of the land in expectation of the price, without the requisite evidence, and in the very teeth of the statute.
But the wisdom of the statute is exemplified by the present case ; of which however it may be said, that according to the most favorable construction of the statute, the complainant has not brought himself within any of the equitable exceptions supposed, The agreement, as stated in the bill, is a very loose one to be sure9. considering the value of the land for which he asks a decree. The performance to the executors of Grant, by the complainant alleged, must be disregarded in considering the evidence upon which the complaint is founded, for it appears to have been upon an agreement made with them, that if the complainant could prove the contract with their testator, so as to enforce the specific performance, in that' case the work and labor was to be considered as done on that account, otherwise that the executors would pay him. The executors had *207 no control over the real estate ; therefore, if the contract was not valid in the lifetime of the testator, their suh- . r--,- . sequent agreement cannot make it so. 1 he case therefore stands upon the allegation of a sale of the land, at sixty pounds per hundred, payable in joiner’s work ; of which the complainant alleges, he paid nine pounds five shillings. From the statement in the bill, it would be supposed that the joiner’s work was to be regulated by the customary prices or by quantum meruit ; and to be bestowed upon such subjects or materials as were then undefined, provided only that the work should be u partly in house building, and partly in any other joiner’s work said Grant would call for.” But when the complainant attempts to make proof of the agreement, his son, who is the only witness who attempts to give it shape and feature, leaves the mind entirely unsatisfied as to the terms of the agreement, or in fact whether the parties had not conversed about an agreement and separated without making one, but in expectation of coming to some definite agreement at another time, and then to reduce it to writing. The witness, Alexander Craig-miles, states, that his father and Grant, went to look at the land proposed to be sold ; that when they returned to the house, his father enquired the number of acres ; Grant replied, that there were 140 or perhaps 150 acres northeast of the road, which his father should have, more or less, at sixty pounds per hundred, “ to which said Craigmiles consented. The next conversation was the size of the proposed building, of which said Craigmiles was to do the joiner’s work in consideration of said land, for the said Grant. The said Craigmiles was to make the shingles, and cover the building ; and said Grant was to provide every other material necessary to complete the work. They concluded the conversation respecting the building,” &c. “Then said Grant observed, it would be necessary to have their bargain committed to writing, and said Craigmiles observed it was then late in the evening, some other time would answer as well. Said Grant agreed to postpone the affair, adding that said Craigmiles might take possession of the land whenever ⅛— he pleased.”
The witness swears that his father did in a few days thereafter take possession of the land ; that in 1789, he thinks, at the request of Grant his father did work on a *208 fulling mill; which appears to be the part performance to the amount of £. 9 5s. in the bill supposed.
Although we cannot from the testimony, understand what were the terms which were to have been reduced to writing, yetit is clear that the work done on the fulling mill, was notin pursuance of the agreement spoken of respecting the land. And itis fartherevident that both parties were impressed with the necessity of reducing the stipulations to writing : and that Grant in particular, did not mean to rely upon the recollection of the son of the contracting party, but expressly declared it was necessary to commit the terms to writing. And indeed so it was : for the son seems to have remembered, as is natural, every thing which his father was to get, but does not remember, or if he does, has not told, what hia father was to do. Yet the court has been applied to for a specific performance of an agreement on one side, when the equivalent stipulated is entirely unknown. Whether the work upon a building of a given size was to be done by Graigmiles en masse, for the land, or whether he was to do the work at stipulated prices, or at subsequent valuation, is not defined by any part of the evidence. Upon the whole, the correct understanding of the deposition of Craigmiles, seems to be, that the parties had conversed about a contract, the general outlines of which were understood, but the necessity of reducing it to writing was also understood. No consideration was paid at the time, no earnest given, but the parties were to meet at some other time. Before it was committed to writing it was obligatory on neither, both having the jus deliberandi, et locus penitentice : and although Grant lived more than a year afterwards, the agreement was not reduced to writing, there was no offer to do it on the part of the complainant ; and Grant did actually change his mind as appears from his will. The complainant would have it thought, that the work to the amount of £. 9 5s. was on his part, a part performance ; and an attempt is made to prove that Grant accepted it as a part performance ; but the son would not swear to it positively, and the six guineas received from Grant by Craigmiles, (as a loan, it is said) caa with more propriety be applied to the discharge of the work, than the work attached to the agreement upon which the parties conversed in the presence of Craig- *209 miles the soil. If the statute were out of the way the evidence would not warrant a decree for specific performance against the heirs. As the prayer of the hill is for a decree for a specific performance against infant heirs, upon the parol contract of their ancestor stated in the bill itself, it is unnecessary to consider the question whether an adult should be permitted to rely upon the statute at the hearing, without having insisted on it by plea or answer. The omission of the guardian to insist upon a legal defence apparent on the face of the record, ought not to prejudice the interest of the infants.
. It is the opinion of this court, that the complainant has made out no case entitling him to have a specific performance of th%parol agreement in his bill alleged.
Wherefore it is decreed, and ordered, that the said decree of the circuit court of Scott, be reversed, and it is hereby set aside and annulled ; the cause is remanded to the said court, with direction to dismiss the complainant’s bill with costs.